CHARLES E. AUSTIN, INC., v. SECRETARY OF STATE.

1. TAXATION—BOAT TERMINAL TRANSFER—GASOLINE TAX.

Gasoline stored in a "boat terminal transfer" for transshipment in interstate or foreign commerce is not subject to the gasoline tax (1 Comp. Laws 1929, §§ 3576, 3583, as amended by Act No. 166, Pub. Acts 1935).

2. SAME—GASOLINE—STORAGE PENDING TRANSSHIPMENT IN INTERSTATE AND FOREIGN COMMERCE—COMMINGLING WITH TAXABLE GASOLINE.

Gasoline stored in tanks pending transshipment in interstate and foreign commerce which had come to rest and been commingled with taxable gasoline for the benefit of the owner is liable for the State gasoline tax, interest and penalties (1 Comp. Laws 1929, §§ 3576, 3583, as amended by Act No. 166, Pub. Acts 1935).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 6] 51 Am. Jur., Taxation, §§ 204, 205; 11 Am. Jur., Commerce, §§ 70–72, 74.

[1–3, 6] State tax in connection with transportation or distribution of oil or gas through pipe lines as affected by commerce clause. 154 A.L.R. 623.

[1–3, 6] When may transit of goods, commenced in another State, be deemed to have been definitely interrupted or to have terminated so as to subject the goods to local taxation. 52 L. Ed. 755; 78 L. Ed. 138.

[1–3, 6] Local transportation of goods as part of interstate or foreign shipment. 51 L. Ed. 540; 74 L. Ed. 187.

[1–3, 6] Mill-in-transit operations or similar interruptions of movements in interstate commerce as affecting State power of taxation. 60 A.L.R. 398.

[1–3, 6] Breaking continuity of passage or shipment as affecting its interstate character. 60 A.L.R. 1465.

[1–3, 6] Beginning of interstate transportation which excludes State taxation. 25 A.L.R. 1201.

[4–7] 13 Am. Jur., Corporations, §§ 7, 8.

[4–7] Disregarding corporate existence. 1 A.L.R. 610; 34 A.L.R. 597.

[10] 51 Am. Jur., Taxation, § 524.

[11, 12] 51 Am. Jur., Taxation, § 498.

[14] 51 Am. Jur., Taxation, §§ 497, 1184, 1185, 1189, 1191.

[14] Tax exemption as affected by failure to claim or delay in claiming it for past years. 115 A.L.R. 1484.

[14] When may payment of tax or assessment be regarded as involuntary or made under duress. 64 A.L.R. 9; 84 A.L.R. 294.

**3. SAME—GASOLINE—BILLS OF LADING.**

Terms of bills of lading pertaining to gasoline claimed to be in interstate and foreign commerce are not controlling in determining whether or not it is taxable, particularly where they appear to be designed only to further tax avoidance (1 Comp. Laws 1929, §§ 3576, 3583, as amended by Act No. 166, Pub. Acts 1935).

**4. CORPORATIONS—SEPARATE EXISTENCE OF DOMESTIC AND FOREIGN CORPORATIONS.**

The separate existence of a domestic and foreign corporation not admitted to do business in this State but both of which were owned by the same person and were engaged in the same business will be ignored and both will be regarded as one where they are so organized and carried on that one is a mere instrumentality or agent or adjunct of the other.

**5. SAME—SEPARATE ENTITIES—EQUITY.**

In domestic corporation's suit to enjoin secretary of State from collecting State gasoline taxes on gasoline stored in tanks owned by owner of all the stock in such corporation and who owned all the stock in foreign corporation not admitted to do business in this State and which latter corporation is claimed to have been owner of gasoline involved, equity will look through and behind the corporate entities to ascertain the true situation.

**6. SAME—TAXATION—GASOLINE IN INTERSTATE OR FOREIGN COMMERCE—BREAK IN CONTINUITY OF SHIPMENT.**

A domestic corporation which is a mere instrumentality, agent or adjunct of foreign corporation not admitted to do business in this State may not escape liability for gasoline tax on gasoline transshipped by latter, where there was a break in this State in the continuity of transportation of such gasoline in interstate or foreign commerce while in tanks owned by common owner of stock in both corporations (1 Comp. Laws 1929, §§ 3576, 3583, as amended by Act No. 166, Pub. Acts 1935).

**7. SAME—DISTINCT ENTITIES AS DEVICE TO EVADE THE LAW.**

A court will disregard distinct corporate entities which exist as a device to violate or evade the law.

**8. EQUITY—CLEAN HANDS.**

One seeking the aid of equity must come with clean hands.

9. Taxation—Gasoline—Boat Terminal Transfer.

>    The deferral of tax on gasoline in a "boat terminal transfer" is
>    an exception in the law which relieves the taxpayer from
>    tax until distribution (1 Comp. Laws 1929, §§ 3576, 3583, as
>    amended by Act No. 166, Pub. Acts 1935).

10. Same—Exception—Construction of Statutes.

>    Statutory provision for an exception to a tax is to be strictly
>    construed.

11. Same—Deferral—Construction of Statute—Commingling of Tax-Free with Tax-Paid Gasoline.

>    Under the gasoline-tax law the deferral of tax on gasoline
>    transferred from steamers and pipe lines to tanks does not ex-
>    tend to deferral to tanks in which tax-paid gasoline is com-
>    mingled (1 Comp. Laws 1929, §§ 3576, 3583, as amended by
>    Act No. 166, Pub. Acts 1935).

12. Same—Commingling of Tax-Free with Tax-Paid Gasoline.

>    The secretary of State was correct in declassifying tank of
>    gasoline from tax-free gasoline to gasoline subject to tax
>    where tank contained some tax-paid gasoline (1 Comp. Laws
>    1929, §§ 3576, 3583, as amended by Act No. 166, Pub. Acts
>    1935).

13. Same—Allowance for Evaporation and Loss of Gasoline.

>    The statutory allowance of three per cent. for evaporation and
>    loss of gasoline while in tank storage in large quantities is
>    the only allowance provided for such loss in the gasoline-tax
>    act (1 Comp. Laws 1929, § 3583, as amended by Act No. 166,
>    Pub. Acts 1935).

14. Same—Gasoline—Refunds—Protest—Fraud—Mutual Mis-
    take.

>    Claim for refund of gasoline taxes already paid, without protest,
>    because of alleged errors in plaintiff's own reports on which
>    based held, not allowable in the absence of averment or proof
>    of fraud or mutual mistake.

15. Same—Gasoline—Casualty Losses—Record.

>    Claim of refund of gasoline taxes for casualty losses of gasoline
>    stored in large tanks held, not supported by record.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted April 6, 1948. (Docket No. 5, Calendar No.
43,918.) Decided June 14, 1948. Certiorari denied
by the Supreme Court of the United States October
11, 1948.

Bill by Charles E. Austin, Inc., a Michigan corporation, against Harry F. Kelly, Secretary of State, to restrain collection of gasoline taxes and from taking action against plaintiff for failure to take out a wholesaler's license. Decree for defendant. Plaintiff appeals. Affirmed.

*Shields, Ballard, Jennings & Bishop,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Ben H. Cole* and *Ernest O. Zirkalos,* Assistants Attorney General, for the defendant.

Boyles, J.   Plaintiff, a Michigan corporation, filed this bill of complaint in the circuit court for Wayne county in chancery to enjoin the secretary of State from levying upon any of plaintiff's property for the purpose of collecting any gasoline taxes, and from taking any action against the plaintiff as a wholesale distributor of gasoline under Act No. 150, Pub. Acts 1927, as amended. After answer filed, and during the course of a hearing on the reference to a circuit court commissioner, amendments to the bill of complaint were allowed setting up further claims by the plaintiff, praying that an accounting be had, and that plaintiff be allowed certain refunds, credits and offsets. After issue was joined on the amended bill of complaint a further extended hearing was held before the circuit court commissioner, resulting in the filing by the commissioner of comprehensive findings of fact and of law. The commissioner recommended that the temporary restraining order be dissolved and that the bill of complaint be dismissed. This was confirmed by the court and from the decree entered accordingly the plaintiff appeals.

An extended review of the pleadings and the testimony set out in over 400 pages of the printed record would be of no benefit to the profession and would needlessly encumber this opinion. Certain questions of law are involved, and a summary of the facts essential to decision thereon follows. The case results from an audit by the secretary of State's office of the plaintiff's records for the period from September 1, 1939, to October 31, 1940. The law and the facts stated herein are as of that period of time. The plaintiff Charles E. Austin, Inc., is a Michigan corporation with an authorized capital of $10,000. The sole shareholder is Margret P. Austin, the wife of Charles E. Austin, who holds all of the stock as trustee for her children. She is also president and secretary of the company. It is engaged in the wholesale gasoline business in the city of Detroit. As a wholesale distributor, it is required to secure a wholesale distributor's license each year from the secretary of State under the State gasoline-tax act. This case involves said statute as it stood in 1940.*

The plaintiff during said period filed monthly reports with the secretary of State and paid the gasoline taxes due according to such reports. As a wholesale distributor of gasoline, it also operated a "boat terminal transfer" within the meaning of said gasoline-tax act, as well as a "bulk storage plant." This plant consisted of four storage tanks of varying capacity, the largest (tank No. 1) having a capacity of 4,200,000 gallons. The real estate and tanks were owned by Margret P. Austin and the tanks were

---

* Act No. 150, Pub. Acts 1927, as amended by Act No. 219. Pub. Acts 1929 (1 Comp. Laws 1929, § 3576 *et seq.*) as amended by Act No. 132, Pub. Acts 1931, Act No. 192, Pub. Acts 1931, Act No. 41, Pub. Acts 1932 (1st Ex. Sess.), Act No. 81, Pub. Acts 1933, Act No. 8, Pub. Acts 1934 (1st Ex. Sess.), Act No. 29, Pub. Acts 1934 (1st Ex. Sess.), Act No. 166, Pub. Acts 1935. See Comp. Laws Supp. 1940, § 3576 *et seq.* and Stat. Ann. 1940 Cum. Supp. § 7.291 *et seq.*

leased by her to Charles E. Austin, Inc. Tank No. 1 was qualified as a "boat terminal transfer." Tank No. 3 was a "bulk storage" tank. Tanks Nos. 2 and 4 were leased to the Joy Oil Company, Ltd., by Margret P. Austin during the navigation season and were used by that company for the storage of gasoline pending transshipment to Canada. The said Joy Oil Company, Ltd., is a corporation organized under Canadian law. Margret P. Austin is also the president and secretary of this company, and also owns all of its shares of stock except a few qualifying shares. It carries on no operations within the State of Michigan except that during the period here involved it stored gasoline in tanks Nos. 2 and 4, and possibly on one occasion in tank No. 3, pending transshipment by boat to Canada. It is not authorized to do business in Michigan, and does not hold a wholesale distributor's license in Michigan. Plaintiff concedes that to some extent there was a commingling of its gasoline with that of the Joy Oil Company, Ltd., in the four tanks. The Joy Oil Company, Ltd., obtains gasoline from suppliers in Michigan and, also, by railroad tank cars from outside the State of Michigan. When the gasoline was shipped by rail to Detroit it was stored in the tanks leased by it from Margret P. Austin pending transshipment by boat to Canada. For further detailed facts, see *Joy Oil Company, Ltd.,* v. *State Tax Commission, ante,* 335.

Plaintiff Charles E. Austin, Inc., claims that inasmuch as at least part of the gasoline in question was ordered by the Joy Oil Company, Ltd., and stored in tanks owned by Margret P. Austin pending transshipment to Canada, Charles E. Austin, Inc., is not liable for the gasoline tax on the same. But the record shows that some of said gasoline was commingled with gasoline owned by Charles E. Austin, Inc., that on occasion Charles E. Austin,

Inc., purchased tank cars of gasoline from Joy Oil Company, Ltd., and also gasoline accumulated in storage tanks pending transshipment to Canada when the plaintiff wished to use the storage tanks. It was also shown that Charles E. Austin, Inc., for several months paid suppliers for gasoline purchased by Joy Oil Company, Ltd., later being reimbursed therefor. On some occasions Joy Oil Company, Ltd., did not have sufficient gasoline in storage to make a full boatload for transshipment to Canada and purchased gasoline from Charles E. Austin, Inc., to fill the boat. Plaintiff also sold Joy Oil Company, Ltd., large quantities of gasoline transported by tank truck to Windsor, Canada. The largest storage tank, designated as tank No. 1, was originally designated as "boat terminal transfer." Gasoline so stored in a "boat terminal transfer" under section 1 * of the gasoline tax act, while in process of transfer, is exempt from payment of gasoline tax, under section 8 † of the act. As of January 1, 1940, the auditor for the secretary of State classified tank No. 1 as "bulk storage" instead of "boat terminal transfer" and assessed a tax on its contents. During January and February, a total of nearly two million gallons of gasoline was unloaded from tank cars into tank No. 1, commingled and blended with "boat" gasoline therein. On July 24, 1940, at which time said auditor reclassified tank No. 1 as "boat terminal transfer," there were 223,000 gallons of gasoline remaining in the tank. Tank-car gasoline, subject to the gasoline tax, was thus commingled and blended with "boat" gasoline, tax-exempt. It is apparent from the record that gasoline received at the tanks was commingled at the convenience of these parties

---

* As amended by Act No. 166, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 3576, Stat. Ann. 1940 Cum. Supp. § 7.291).—Reporter.

† As amended by Act No. 166, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 3583, Stat. Ann. 1940 Cum. Supp. § 7.298).—Reporter.

regardless of whether it came by boat, by tank car, or by truck. Some of it was withdrawn for retail sale in Michigan, liable for the tax. Some of it was withdrawn for transshipment to Canada, and so far as reasonably possible the secretary of State considered this as tax-exempt and made refunds accordingly. Except that it was for the convenience and benefit of the plaintiff, by commingling the gasoline for transshipment with tax-liable gasoline, the tax-exempt gasoline would doubtless have been stored separately, and thus have avoided the confusion brought about by the manner in which the gasoline storage was handled.

We are not impressed with any merit in plaintiff's claim that under the circumstances of this case the gasoline stored in the tanks pending transshipment to Canada is not liable for the gasoline tax, interest and penalties imposed by the State. Tax-exempt gasoline and taxable gasoline was commingled by the plaintiff and Joy Oil Company, Ltd., and there was a break in the continuity of transportation of the gasoline in interstate and foreign commerce, for the convenience and benefit of plaintiff. Counsel relies on *A. G. Spalding & Bros.* v. *Edwards,* 262 U. S. 66 (43 Sup. Ct. 485, 67 L. Ed. 865), and *Richfield Oil Corp.* v. *State Board of Equalization,* 329 U. S. 69 (67 Sup. Ct. 156, 91 L. Ed. 80), to support its claim that the gasoline stored in tanks pending transshipment to Canada is tax-exempt under the foreign commerce clause of the United States Constitution. Those cases were considered and distinguished as not applicable, in *Joy Oil Company, Ltd.,* v. *State Tax Commission, supra,* which case is controlling here. In *Von Hamm-Young Co., Ltd.,* v. *City and County of San Francisco,* 29 Cal. (2d) 798 (178 Pac. [2d] 745, 171 A. L. R. 274), relied upon by plaintiff, the court pointed out that none of the product was sold in the State, the storage being due solely to the lack

of shipping caused by war emergency. In the present case gasoline supposedly destined for Canada was not only commingled with gasoline to be distributed to the retail trade in Michigan, but a large amount of the exportable gasoline was itself diverted to retail use in Michigan. In the *Spalding Case, supra,* the court stressed the lack of reasonable probability that the goods would be diverted from export. Here there was not only a probability; it happened. The bills of lading are not controlling, particularly where they appear to be designed only to further tax avoidance. *Superior Oil Co.* v. *State of Mississippi, ex rel. Attorney General,* 280 U. S. 390 (50 Sup. Ct. 169, 74 L. Ed. 504). The present case is similar to *Monamotor Oil Co.* v. *Johnson* (1934), 292 U. S. 86 (54 Sup. Ct. 575, 78 L. Ed. 1141). The last two cases deal with interstate rather than foreign commerce, and while the supreme court has pointed out a difference in the taxing power of the State in the two situations, it nevertheless uses the same tests as to continuity of transit.

Nor is there merit in plaintiff's claim that Charles E. Austin, Inc., a separate corporation, is not liable for the gasoline tax on gasoline transshipped by Joy Oil Company, Ltd. The conclusion reached in *Joy Oil Company, Ltd.,* v. *State Tax Commission, supra,* is equally applicable here. Furthermore, the separate existence of the two corporations will be ignored and both will be regarded as one where they are so organized and carried on that one is a mere instrumentality or agent or adjunct of the other. *In re Culhane's Estate,* 269 Mich. 68.

In *Joy Oil Company, Ltd.,* v. *State Tax Commission, supra,* the plaintiff unsuccessfully sought to avoid payment of ad valorem taxes on gasoline stored in said tanks on the ground that the gasoline was a commodity in foreign commerce. In the case at bar plaintiff seeks the aid of equity to prevent the col-

lection of certain gasoline taxes, penalties and interest on gasoline stored in said tanks during the period covered by the secretary of State's audit. Under the involved circumstances here shown, where there are two corporations in both of which the wife of Charles E. Austin is the owner of the corporate shares as well as the president and secretary of both corporations, and who also individually owns all of the storage facilities and leases the same to said corporations, equity will look through and behind the corporate entities to ascertain the true situation. Furthermore, plaintiff admits that Margret P. Austin individually owns a number of retail gasoline filling stations in Detroit, and that Charles E. Austin, Inc., is her source of supply. It is a fair inference that the interlocking corporate and individual ownership and leasing arrangements here shown, have been conceived and carried on for the purpose of evading payment of taxes. We have frequently said that equity looks to the substance rather than to the form. *Foster* v. *Ypsilanti Savings Bank,* 299 Mich. 258; *Duro Steel Products* v. *Neubrecht,* 303 Mich. 175. We have also held that the Court will disregard distinct corporate entities which exist as a device to violate or evade the law. *People, ex rel. Attorney General,* v. *Michigan Bell Telephone Co.,* 246 Mich. 198 (P. U. R. 1929B, 455, P. U. R. 1929E, 27); *Fors* v. *Farrell,* 271 Mich. 358; *Herman* v. *Mobile Homes Corporation,* 317 Mich. 233. No citation of authority is necessary to establish that one who seeks the aid of equity must come with clean hands.

Plaintiff contends that the secretary of State had no right to change the classification of tank No. 1 as a "boat terminal transfer" to that of "bulk storage" and assess a gasoline tax on its contents. The deferral of tax on gasoline in a boat terminal transfer is an exception in the law, which relieves the

taxpayer from tax until distribution. Such an exception is to be strictly construed. *St. Joseph's Church v. City of Detroit,* 189 Mich. 408. It cannot be assumed that the legislature, in deferring tax on gasoline transferred from steamers and pipe lines to tanks (sections 1 and 8 of the act), intended to extend the deferral to tanks in which tax-paid gasoline is commingled, especially where such extension enables the owner to escape tax on some of the stock. Before January 1, 1940, tank No. 1 contained about 2,363,283 gallons of tax-deferred gasoline and was classified as a boat terminal transfer. Between January 12th and February 20th, there were deposited in it 1,906,184 gallons of tank-car gasoline upon which tax had been paid after deducting the three per cent. allowance for loss. During March, April, May and June, 1,906,184 gallons were withdrawn from this tank for retail distribution in Michigan. During storage some of that gasoline evaporated. The plaintiff admits that 17,000 gallons of evaporation should have been allocated to the tax-paid gasoline, so that only 1,889,184 gallons should have been withdrawn without further tax. The other 17,000 gallons should have been taxed on withdrawal as tax-deferred gasoline. The secretary of State was correct in declassifying the tank during a period in which it contained tank-car gasoline, and reclassifying it as bulk storage.

Several other questions were injected into the case by the amendments which the trial court allowed the plaintiff to make during the hearing before the circuit court commissioner. Issue was joined on these matters, and the plaintiff argues that they were not decided correctly by the trial court. The same questions are raised here on the appeal. They relate to refunds to which plaintiff claims it is entitled, for claimed overpayment of gasoline taxes. Section 8 of the gasoline-tax act, as amended (Comp.

Laws Supp. 1940, § 3583, Stat. Ann. § 7.298), provides for an allowance of three per cent. for evaporation and loss. The difficulty in the determination of loss caused by volatility of gasoline by evaporation, and accurate volume measurement of large quantities of gasoline, doubtless was the reason for the statutory allowance of a flat three per cent. loss. It is the only allowance in the act, for such loss, and was so determined by the trial court.

Plaintiff's claims for refund of gasoline taxes already paid, without protest, because of plaintiff's own claimed errors in its reports to the secretary of State find no basis for allowance in the gasoline-tax act. Plaintiff's claim of casualty losses is not supported by the record. The taxes paid by plaintiff were in the amount computed and reported by plaintiff, and there is no averment or proof of fraud or mutual mistake. The very comprehensive findings, report and recommendation of the circuit court commissioner, wherein plaintiff's claims for refunds were reviewed at length, were properly confirmed by the trial court.

Affirmed, with costs.

BUSHNELL, C. J., and SHARPE, REID, NORTH, BUTZEL, and CARR, JJ., concurred.

DETHMERS, J., did not sit.