In re **MORAN PIPE & SUPPLY CO., INC.,** Debtor.

**Kenneth G.M. MATHER, Trustee,** Plaintiff,

v.

**G.K. PIPE CORPORATION, et al.,** Defendants.

**Bankruptcy No. 90–70581. Adv. No. 90–7068.**

United States Bankruptcy Court, E.D. Oklahoma.

July 25, 1991.

Robert Erickson and Thomas Creekmore, Jones, Givens, Gotcher & Bogan, Tulsa, Okl., for plaintiff.

Ed Cadenhead, Elsener & Cadenhead, Seminole, Okl., for defendants.

## ORDER

JAMES E. RYAN, Chief Judge.

On June 17, 1991, this Court conducted a Trial at which evidence was presented in support of and in opposition to the above-referenced action. Plaintiff was represented at the Trial by Robert Erickson and Thomas Creekmore, while the Defendants were represented by Ed Cadenhead.

Prior to Trial, counsel for the parties presented a Joint Stipulation (Docket Entry No. 38) in which the following matters were addressed:

1. Defendants, G.K. Pipe, CPI (Casing Pullers, Inc.) and G.K. Oil, confessed and stipulated for the entry of judgment against said Defendants as prayed for by Plaintiff.

2. Plaintiff dismissed Defendant, Meca Oil Corporation, from the case, with prejudice as to debts owned (sic) to Moran Pipe & Supply Company, Inc. (the Debtor herein), but without prejudice to Plaintiff's right to recover debts alleged to be owed by Meca Oil Corporation to the remaining Defendants.

3. Plaintiff dismissed Defendant, Red's Roustabout Service, Inc., from the case, with prejudice, to the extent that Plaintiff's Complaint sought to substantively consolidate Defendant, Red's Roustabout, with Debtor Moran Pipe & Supply Company, Inc. Plaintiff specifically retained all other claims or causes of action against Defendant, Red's Roustabout, or which can be asserted by the Plaintiff on behalf of the remaining Defendants.

Thus, Trial proceeded against the sole remaining Defendant, George Kahn Operating Company.

At the conclusion of the presentation of evidence, this Court afforded the parties an opportunity to submit proposed Findings of Fact and Conclusions of Law, to be incorporated in this Court's Order at the Court's discretion. These pleadings were filed in a timely manner and were considered in the formulation of this Order.

After review of the proposed Findings of Fact and Conclusions of Law of the parties, the evidence and the Memoranda of Law submitted by the parties prior to Trial on April 26, 1991 (Docket Entries No. 32 and 33), this Court does hereby enter the following Findings of Fact and Conclusions of Law in conformity with B.R. 7052 in this core proceeding:

## STATEMENT OF ISSUE

The sole issue to be determined in this Order is whether the evidence presented at Trial supports the application of the "alter ego" doctrine, thereby resulting in the Defendant corporation being substantively consolidated into the Debtor corporation, Moran Pipe & Supply Company.

Attendant to this issue is the effect of substantive consolidation and the procedural requirements for the collapsing of the Defendant corporations to which the alter ego doctrine is found to be applicable into the Debtor corporation.

## FINDINGS OF FACT

1. Defendant, George Kahn Operating, Inc. ("G.K. Operating") was incorporated in

accordance with the laws of the state of Oklahoma on January 9, 1978 to operate oil and gas wells. Defendant was operated by George Kahn as President and director until his death on February 18, 1981. Mike Kahn, George Kahn's son, was Vice President and a director of G.K. Operating until the death of George Kahn at which time Mike Kahn became President and a director of G.K. Operating.

Jay Levy became Vice President and a director of G.K. Operating upon the death of George Kahn.

2. Upon George Kahn's death, the stock of G.K. Operating was owned seventy-five percent by the George Kahn Trust, the Trustees of which were Mike Kahn and the First National Bank & Trust Company of Tulsa, and twenty-five percent by Helen Adams, a former employee of George Kahn. The George Kahn Trust's named beneficiaries are Mike Kahn, the son of George Kahn; Ella Kahn, George Kahn's wife and Mike Kahn's mother; Iris Levy, George Kahn's sister and Jay Levy's mother; and Ira Jason Kahn, George Kahn's grandson.

3. The Moran Pipe & Supply Company ("Moran") was incorporated in accordance with the laws of the state of Oklahoma on March 29, 1985. Since incorporation, the officers and directors of Moran have been Mike Kahn, President; Iris Levy, Vice President; and Jay Levy, Secretary/Treasurer.

The stock in Moran is one hundred percent owned by G.K. Pipe Corporation. G.K. Pipe Corporation is wholly owned by Mike Kahn, Jay Levy, Iris Levy, and First National Bank & Trust Company of Tulsa and Mike Kahn as Co-Trustees of the George Kahn Trust. Moran was incorporated to sell tubular goods and oil field products.

4. Casing Pullers, Inc., G.K. Oil and G.K. Pipe have at all times had Mike Kahn and Jay Levy as officers and directors. These corporations have been collapsed by stipulation of the parties into the Debtor corporation, Moran.

Casing Pullers, Inc. operated as an Oklahoma corporation to close and plug abandoned oil and gas wells. G.K. Oil was also an Oklahoma corporation investing in oil and gas properties. G.K. Pipe is an Oklahoma corporation operating as a holding company for Moran, G.K. Oil and Casing Pullers, Inc.

5. Moran operated out of an office located in Seminole, Oklahoma. This same office was used as the business office of Defendant, G.K. Operating, as well as G.K. Pipe, G.K. Oil and Casing Pullers, Inc. Moran paid all salaries and overhead expenses for these entities and subsequently invoiced these entities for the proportionate share of these expenses. However, no credible evidence was presented to prove that any of these expenses were ever reimbursed to Moran by these entities.

6. Moran provided the working capital for Defendant, G.K. Operating, against the advice of Moran's accountants. G.K. Operating had a negative cash flow and owed Moran some $336,000.00 as of March 31, 1987. At the time of the filing of the Petition on May 21, 1990, G.K. Operating owed Moran some $142,527.05.

The other Defendant entities named herein likewise received goods and services from Moran, for which Moran has yet to receive full and final compensation.

7. Moran experienced financial difficulties in 1987 and 1988 but continued to make advances to the Defendant, G.K. Operating and the other Defendant entities. During periods of financial difficulties, the salaries of the officers of Moran were more than doubled. The explanation provided for this salary increase was that the officers "needed it."

8. Moran guaranteed a debt of Defendant, G.K. Operating, with First National Bank of Seminole, Seminole, Oklahoma, as reflected in a Promissory Note executed April 15, 1988. Subsequently, a Loan Agreement of October 12, 1989 reaffirmed this guarantee and referred to Moran and the Defendant entities as "related entities." Mike Kahn executed on behalf of all of the Defendant entities, including Moran and G.K. Operating.

9. The Oklahoma Annual Franchise Tax Return filed on behalf of Moran for the period of July 1, 1988 through June 30, 1989 lists the Defendant entities, including G.K. Operating, as "affiliates," related by common ownership.

10. Substantial assets were transferred from Moran to G.K. Operating, the related Defendant entities and the individual officers of these corporations. The value and specific property involved in these transfers may never be known since records of Moran were destroyed just prior to the filing of the bankruptcy Petition as admitted by Jay Levy. Additionally, Moran kept insufficient inventory records for this determination to be made. The principals of the corporation relied upon the memory of a yard foreman for the content of the inventory of Moran.

## CONCLUSIONS OF LAW

■ A. Generally, a corporation is deemed to be an individual legal entity separate and apart from other legal entities. *Gulf Oil Corp. v. State of Oklahoma*, 360 P.2d 933 (Okla.1961). However, when a corporation acts as a mere instrumentality or alter ego of another legal entity, the corporate shell is dissolved and the two entities become one. See *Fish v. East*, 114 F.2d 177 (10th Cir.1940); *Lowell Staats Mining Company, Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir.1989); *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645 (10th Cir.1980); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373 (10th Cir.1980); *In the Matter of Gulfco Investment Corp.*, 593 F.2d 921 (10th Cir.1979); *In re Eufaula Enterprises, Inc.*, 565 F.2d 1157 (10th Cir.1977); *Palmer v. Stokely*, 255 F.Supp. 674 (D.C.W.D.Okla.1966); and *Gulf Oil Corp. v. State of Oklahoma*, supra.

The backdrop against which the circumstances of a particular case are examined for the applicability of the alter ego doctrine has universally been considered to be that set forth in the case of *Fish v. East*, supra. In that case, the Tenth Circuit Court of Appeals enumerated the following criteria against which the facts of a particular case are to be scrutinized:

(1) the parent corporation owns all or a majority of the capital stock of the subsidiary;

(2) the parent and subsidiary corporations have common directors or officers;

(3) the parent corporation finances the subsidiary;

(4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5) the subsidiary has grossly inadequate capital;

(6) the parent corporation pays the salaries or expenses or losses of the subsidiary;

(7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8) in the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division;

(9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and

(10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

■ All of these factors need not be present for a Court to determine that a particular corporation is an alter ego of another corporation. *Lowell Staats Mining Company, Inc. v. Pioneer Uravan, Inc.*, supra, p. 1263. Further, although most cases in which the alter ego doctrine has been applied have involved a showing of fraud or a substantial commingling of assets, proof of fraud is not a necessary element in finding the applicability of the alter ego doctrine. *Milgo Electronic Corp. v. United Business Communications, Inc.*, supra, p. 662.

Many of the cases involving the application of the alter ego doctrine have involved a parent/subsidiary relationship between two corporate entities which are examined. Considering the manner in which the two

corporations at issue conducted business in the instant case, the parent or dominant corporation shall be considered to be Moran, while the subordinate or subsidiary corporation shall be considered to be G.K. Operating.

■ B. A determination of the applicability of the alter ego doctrine involves a question of fact. See, for example, *Luckett v. Bethlehem Steel Corp.*, supra. When we shed the light of the *Fish* criteria against the individual facts of the case at bar, this Court must conclude the following:

(1) Although Moran does not own the stock of G.K. Operating, there is a substantial identity of ownership by the individual shareholders of the two corporations. Mike Kahn, Jay Levy and the George Kahn Trust are the common thread of ownership which is weaved throughout these corporate entities.

(2) Moran and G.K. Operating have substantially common directors and officers. The evidence was clear at Trial that Mike Kahn and Jay Levy were the individuals controlling the acts and activities of these two corporations as well as several of the related Defendant entities which have already been collapsed into Moran.

(3) Moran provided a substantial amount of the financing for G.K. Operating and the other Defendant entities. As reflected in the evidence, Moran was providing the working capital for Defendant, G.K. Operating. A review of the financial information introduced at the Trial of Moran indicates that the providing of this capital to the entities was to a large measure a major function of Moran.

(4) Moran neither subscribes to the capital stock of G.K. Operating nor caused its incorporation.

(5) As reflected by the evidence, an analysis of the financial wherewithal of G.K. Operating indicates that this entity was severely under-capitalized.

(6) Moran satisfied all overhead expenses and salaries of G.K. Operating while these entities operated out of the same facility. Although Defendant states that Moran billed the individual entities, including G.K. Operating, for these expenses, no evidence was presented that these expenses were ever reimbursed to Moran. Billing does not necessarily mean collection.

(7) A considerable amount of G.K. Operating's business in operating various oil and gas wells was accomplished through Moran for those tubular products needed. The various Defendant entities interrelated their business enterprises with one another to a considerable degree, although clearly, all entities dealt with outside businesses.

(8) Although the record does not indicate that G.K. Operating was designated with the technical label of a corporate "subsidiary" of Moran, the facts indicate that this is substantially the relationship under which these corporations operated. On the Oklahoma Franchise Tax Return, G.K. Operating is carried as an "affiliate" of Moran. An "affiliate company" is a "company effectively controlled by another company" which "signifies a condition of being united; being in close connection, allied, associated, or attached as a member of branch." Further, "corporations which are related as parent and subsidiary, characterized by identity of ownership of capital stock" have been designated as affiliates. See BLACK'S LAW DICTIONARY 54 (5th ed. 1979).

Further, in the Loan Agreement in which Moran guaranteed the debt of G.K. Operating, Moran and G.K. Operating as well as the other Defendant entities were designated as "related entities."

This independent evidence indicates to this Court that the officers and directors of Moran considered G.K. Operating to be a de facto corporate subsidiary of Moran.

(9) Despite the fact that the officers and directors of Moran were aware of that corporation's deteriorating financial condition, these same officers and directors continued to advance goods, services and cash to G.K. Operating, while acting as common officers and directors

of the two corporations. Additionally, while Moran was in this weakened financial condition, Mike Kahn and Jay Levy, while acting as an officer and director of Moran, increased their salaries by a substantial amount.

While these activities indicate that actions were taken to the detriment of the parent rather than to the detriment of the subsidiary, it is evidence of the lack of recognition by the officers and directors of the separate corporate entities and the independent duty owed to each.

(10) Due to the disgraceful state of the books and records for Moran and since the parties presented no evidence of the failure of G.K. Operating to conduct itself under formal legal requirements of a corporation, we are unable to determine whether the technical legal requirements for corporate separateness were observed by Moran and G.K. Operating.

Additionally, in a practical sense, we must recognize the familial relationship between the principals of the various corporations and the natural propensity to protect and benefit the individual family members at the expense of the technical legal requirements for maintaining each distinct corporate entity. These individuals allowed their relationship to defeat the integrity of the corporate structures which, in essence, resulted in a single, large corporation with illusory corporate affiliates.

After due consideration of the totality of the evidence projected against the current law establishing the criteria for the alter ego doctrine, we find that G.K. Operating acted as an alter ego of Moran Pipe & Supply Company. Thus, G.K. Operating shall be substantively consolidated with Moran for administration by the Trustee in bankruptcy.

■ C. Having found sufficient evidence to collapse the G.K. Operating entity into Moran Pipe & Supply, the Debtor herein, we must examine procedural requirements for accomplishing this task. The smattering of cases which address the collapsing of a non-debtor corporation into a debtor corporation in a bankruptcy setting indicates that *all* assets and liabilities of the collapsed corporation are brought into the debtor corporation for administration by the trustee in bankruptcy. "[W]here the court decides that the corporate entity of the subsidiary should be completely ignored and *its assets and liabilities treated as those of the parent corporation,* it is both logical and convenient that this be done in one proceeding." (emphasis added by Court) *Stone v. Eacho,* 127 F.2d 284 (4th Cir.1942). See also *Palmer v. Stokely,* supra; *In the Matter of Gulfco Investment Corp.,* supra. Thus, by dissolving the corporate shell of the various affected Defendant entities, the merging of the corporations results in complete substantive consolidation.

As a result, George Kahn Operating Company, G.K. Pipe Corporation, Casing Pullers, Inc. and G.K. Oil Corporation shall be forced to file bankruptcy schedules as if they were the original debtor named herein.

IT IS THEREFORE ORDERED that judgment be entered in favor of the Plaintiff, Kenneth G.M. Mather, Trustee in Bankruptcy, and against G.K. Pipe Corporation, Casing Pullers, Inc., G.K. Oil Corp. and George Kahn Operating Company, in that these entities are substantively consolidated into the Debtor herein, Moran Pipe & Supply Company. All other causes of action named in the Amended Complaint are dismissed as to these Defendants as being moot.

As stipulated by the parties, Defendant, Meca Oil Corporation is hereby dismissed from this action and Red's Roustabout Service, Inc. is dismissed as to the cause of action which is the subject of this Order.

IT IS FURTHER ORDERED that the Plaintiff file a Second Amended Complaint establishing the action against Defendant, Red's Roustabout Service, Inc., based only at 11 U.S.C. § 544(b) and § 548. Defendant, Red's Roustabout, shall be afforded an opportunity to answer or otherwise respond.

IT IS FURTHER ORDERED that a Scheduling Conference be conducted in this adversary proceeding.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment filed by Plaintiff on February 28, 1991 (Docket Entry No. 21) is denied as being moot due to the judgment contained herein.

IT IS FURTHER ORDERED that the Defendant corporations file consolidated bankruptcy schedules in the main bankruptcy case to which this adversary is associated.