**In re CIRCLE LAND AND CATTLE CORPORATION, Debtor.**

**HELENA CHEMICAL COMPANY, Plaintiff,**

v.

**CIRCLE LAND AND CATTLE CORPORATION and Custom Agri–Services, Inc., Defendants.**

**Nos. 96–21901, 97–6039.**

United States Bankruptcy Court, D. Kansas.

Oct. 8, 1997.

Max E. Estes, Dodge City, KS, and Martin R. Ufford, Redmond & Nazar, L.L.P., Wichita, KS, for Helena Chemical Co.

Jan Hamilton, Hamilton, Peterson & Keeshan, Topeka, KS, and William E. Metcalf, Justus and Metcalf, Topeka, KS, for Kansas Circle Land and Cattle Corporation.

Cynthia L. Reams, Weisenfels & Vaughan, Kansas City, MO, for Custom Agri–Services, Inc.

Cynthia F. Grimes, Grimes & Rebein, Lenexa, KS and Michael D. Hepperly, Wichita, KS, for C. Dean Gigot.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The question is whether Helena Chemical Company's adversary complaint against Custom Agri–Services, Inc., should be dismissed. Custom Agri–Services, Inc. ("Custom"), a non-debtor corporation, moves under FED. R.CIV.P. 12(b)(6) to dismiss the complaint for its failure to state a claim upon which relief can be granted.[2] According to *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), a motion under this rule should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." For the following reasons, I conclude that the complaint of Helena Chemical Company ("Helena") fails to state a claim upon which relief can be granted against Custom Agri–Services, Inc.[3]

Helena's eight-page complaint refers to 12 attached exhibits: the Annual Reports of Circle Land and Cattle Corporation ("Circle") filed with the Kansas Secretary of State for tax years ending February 28, 1994, February 28, 1995, and February 28, 1996; the Annual Reports of Custom Agri–Services, Inc., filed with the Kansas Secretary of State for tax years ending November 30, 1993, November 30, 1994, and November 30, 1995; a partial transcript of the deposition of Custom Agri–Services, Inc.'s accountant, Steven Paul; Circle Land and Cattle Corporation's corporate income tax returns for tax years ending February 28, 1995, and February 28, 1996; a partial transcript of the deposition of

---

1. Plaintiff Helena Chemical Company appears by its attorneys, Max E. Estes, Dodge City, Kansas, and Martin R. Ufford of Redmond & Nazar, L.L.P., Wichita, Kansas. Debtor/defendant Circle Land and Cattle Corporation appears by its attorneys, Jan Hamilton of Hamilton, Peterson, & Keeshan, Topeka, Kansas, and William E. Metcalf of Justus and Metcalf, Topeka, Kansas. Defendant Custom Agri–Services, Inc. appears by its attorney, Cynthia L. Reams of Weisenfels & Vaughan, Kansas City, Missouri. C. Dean Gigot appears by his attorneys, Cynthia F. Grimes of Grimes & Rebein, Lenexa, Kansas, and Michael D. Hepperly, Wichita, Kansas.

2. FED.R.BANKR.P. 7012 incorporates FED.R.CIV.P. 12.

3. The parties have stipulated in the pretrial order that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper; that all necessary and indispensable parties are joined; and that the Court may try this adversary proceeding to final judgment. The Court finds independently of the stipulation that the motion to dismiss under FED. R.CIV.P. 12(b)(6) is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. KAN. RULE 83.8.5).

Edward B. Walsh, an analyst in the office of the United States Trustee; and statements of rental income received by Circle Land and Cattle Corporation from leasing its land and equipment.

### Allegations in Helena's Complaint

Helena makes the following relevant allegations in its complaint:

C. Dean Gigot is president of Circle Land and Cattle Corporation. Gina Gigot Herrman is secretary-treasurer. C. Dean Gigot and his wife, Esther, hold the stock of Circle with Gina Gigot Herrman, Marc Gigot, and Darren Gigot. Gina, Marc, and Darren are C. Dean Gigot's children. Whether they are Esther's children as well is not stated Esther is the sole member of the board of directors of Circle. Dean is not on the board of Circle.

Gina Gigot Herrman is president of Custom Agri–Services, Inc. Charles Owen is secretary and treasurer. Gina Gigot Herman, Marc Gigot, and Darren Gigot hold the stock of Custom Agri–Services, Inc. Although C. Dean Gigot owned stock in Custom in 1994, he no longer holds its stock. However, he is on the board of directors of Custom with Marc and Darren.

An accounting employee of Custom does work for both Custom and Circle. Custom and Circle share an office, but Circle's schedules do not show it paying rent for the office to Custom or vise versa. Custom leases 95% of Circle's land and equipment at rental rates below market and under favorable terms.

Custom pays Circle's taxes and land and equipment debts, but these payments are shown on Circle's books. (Exhibit 11 shows such payments between December 1, 1995, and September 20, 1996.)

Gina received compensation from Circle in 1995. C. Dean Gigot did not. Circle paid no compensation to officers in 1994. According to Helena, during the year before the filing, the family used Custom to divert income from Circle for their personal benefit rather than paying Helena. Helena believes that Dean or other officers of Circle were paid wages in 1994 or 1995 by Custom, rather than by Circle. Helena believes that if these payments were made, it would show that Custom is being used to funnel money to Dean and his offspring.

On December 18, 1996 (the proper date must be 1995 because the case was filed August 9, 1996), while Helena was suing Circle in state court, Circle closed its bank account at American National Bank and deposited funds from the closed account to Custom's account at the same bank. This alleged commingling of money continued between the December date and September 23, 1996.

While the state court lawsuit was pending, Circle traded equipment subject to Helena's security interest and purchased new equipment in the name of Custom. (A 8970 Ford tractor in Exhibit 12 is an example.)

Helena alleges that Custom has been used to block oversight of Circle's operations so that Helena cannot determine Circle's net income from crops produced with Circle's equipment and cannot determine what income has been used by insiders for their personal benefit. Helena prays that the Court enter:

... an order (1) declaring Custom Agri–Services, Inc. is the alter ego of the debtor, Circle Land and Cattle Corporation; (2) joining Custom Agri–Services, Inc. as a debtor in the Chapter 11 bankruptcy proceeding thereby subjecting Custom Agri–Services, Inc. to all of the duties owed by a Chapter 11 debtor-in-possession under the Bankruptcy Code; and (3) requiring Custom Agri–Services, Inc. to join in the disclosure statement and plan filed by the debtor and (4) requiring Custom Agri–Services, Inc. and Circle Land and Cattle Corporation to file an amended disclosure statement and plan that is in conformance with the requirements of the Bankruptcy Code.... [4]

Helena's prayer for relief confuses state corporate law and federal bankruptcy law when it asks that Custom be declared the alter ego of Circle and that Custom be joined

---

**4.** Complaint to Determine Custom Agri–Services, Inc. Is an Alter Ego of the Debtor filed March 14, 1997, at 7–8.

as a debtor in the Chapter 11 so as to subject Custom to all the duties of a debtor-in-possession. State corporate law authored the alter ego doctrine. Federal bankruptcy law conceived substantive consolidation, the doctrine of joining the estates of bankrupt entities. The two doctrines are distinguished in a well-regarded bankruptcy treatise discussing administrative and substantive consolidation, on the one hand, and piercing-the-corporate-veil jurisprudence and merger, on the other:

> Substantive consolidation should not be confused with either the corporate law concept of piercing the corporate veil or the bankruptcy law concept of joint administration. Unlike piercing the corporate veil, substantive consolidation does not seek to hold shareholders liable for acts of their incorporated entity. A corporate law concept closer to substantive consolidation is merger of two corporations under state law.[5]

### Alter Ego Law

■■■ Under the alter ego doctrine, state courts may impose liability on the personal assets of a controlling shareholder who uses the corporation as an instrumentality to conduct his or her own personal business. *Kvassay v. Murray*, 15 Kan.App.2d 426, 436, 808 P.2d 896 (1991) (citing *Sampson v. Hunt*, 233 Kan. 572, 579, 665 P.2d 743 (1983)). This approach is, of course, contrary to the customary rule that a corporate shareholder has no personal liability to the creditors of the corporation. Before the courts will pierce the corporate veil in Kansas, as in most states, a creditor dealing with the corpora-

tion must show that a shareholder conducted his or her personal business through the corporate entity by fraud, injustice, or wrongdoing damaging to the creditor. *Kvassay* 15 Kan.App.2d at 440, 808 P.2d 896; *accord McCulloch Gas Trans. Co. v. Kansas–Nebraska Nat. Gas Co.*, 768 F.2d 1199, 1201 (10th Cir.1985). Kansas cases involving closely held corporations list eight factors the courts look to in deciding whether a shareholder has dominated a corporation to such an extent that the corporate veil should be pierced: (1) undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) non-payment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) non-functioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operation of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud. *Amoco Chemicals Corp. v. Bach*, 222 Kan. 589, 594, 567 P.2d 1337 (1977); *Kvassay*, 15 Kan.App.2d at 437, 808 P.2d 896.[6]

■■■ Undoubtedly, "piercing the veil" jurisprudence has played a role in bankruptcy. But as Professor Phillip I. Blumberg explains in his treatise, THE LAW OF CORPORATE GROUPS, BANKRUPTCY LAW, the bankruptcy courts are replacing piercing-the-veil theory with a decisional rationale that examines equitable grounds for disregarding separate corporate existence.

> A doctrine developed to protect limited liability in tort and contract cases involving substantive liability has little usefulness in other areas where different objectives and underlying policies are involved. In bank-

---

**5.** 1 DAVID G. EPSTEIN ET AL., BANKRUPTCY 26 (1992).

**6.** When parent and subsidiary corporations are the focus of the alter ego charge, these eight factors are expanded to ten: (1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) whether the corporations have common directors or officers; (3) whether the parent corporation finances the subsidiary; (4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent corporation; (8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 683, 896 P.2d 1012 (1995). *See also Service Iron Foundry, Inc., v. M.A. Bell Company*, 2 Kan.App.2d 662, 588 P.2d 463 (1978).

ruptcy, equitable considerations govern. The guiding policies are equality of distribution and fairness to creditors. Although "piercing the veil" jurisprudence, notwithstanding its limited conceptual usefulness, in the past has played a prominent role in bankruptcy, the courts increasingly are relying on a different framework for decision. In bankruptcy, they are increasingly analyzing intragroup transactions and guaranties to determine whether recognizing or disregarding the separate existence of a constituent corporation of the group will best implement equitable objectives.[7]

## Substantive Consolidation Law

■ In bankruptcy this "disregarding the separate existence of a constituent corporation" is called substantive consolidation. This remedy eliminates inter-company liabilities and requires the general creditors of the separate entities to share in pooled assets.

■ Substantive consolidation is judge-made law developed in a series of cases under the Bankruptcy Act of 1898 in which the courts consolidated the separate estates of pending bankruptcy cases. *See Stone v. Eacho,* 127 F.2d 284 (4th Cir.1942); *Soviero v. Franklin National Bank of Long Island,* 328 F.2d 446 (2d Cir.1964); *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845 (2d Cir.1966); *In re Flora Mir Candy Corp.,* 432 F.2d 1060 (2nd Cir.1970); *Continental Vending Machine,* 517 F.2d 997 (2nd Cir. 1975).

The present Bankruptcy Code does not specifically authorize substantive consolidation. But the concept is alluded to in the Advisory Committee Note to FED. R. BANKR.P. 1015. This rule permits *administrative* consolidation of two or more petitions pending in one court. The Committee Note recognizes *substantive* consolidation when it says: "Consolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates." [8]

This lack of express authority has not prevented bankruptcy judges from ordering substantive consolidation under the present Code. And as Professor Blumberg observes, bankruptcy judges have continued to refine the tests for consolidation beyond the mere commonality tests of alter ego law. For example, in *In re Snider Brothers, Inc.,* 18 B.R. 230, 238 (Bankr.D.Mass.1982), the court proposed a two-prong test: "First, the applicant must show that there is a *necessity* for [substantive] consolidation, or a *harm* to be avoided by use of the equitable remedy of consolidation." (Emphasis added.) Second, the applicant must demonstrate that the *benefits* of the consolidation outweigh the resulting harm to any objecting *creditors.* In *In re Auto–Train Corp.,* 810 F.2d 270, 276 (D.C.Cir.1987), the court· opined that: (1) "[t]he proponent must show . . . a substantial identity between the entities"; (2) "that consolidation is necessary to avoid some *harm* or to realize some *benefit* "; and (3) if a *creditor* objects "on grounds that it relied on the separate credit of one of the entities and that it will be prejudiced by the consolidation . . . . the court may order consolidation only if it determines that the demonstrated benefits of consolidation 'heavily' outweigh the *harm.*" (Emphasis added.) Finally in *Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.),* 860 F.2d 515, 518 (2nd Cir.1988), the court said the test for substantive consolidation is: "(i) whether *creditors* dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,' [quoting 5 COLLIER ON BANKRUPTCY ¶ 1100.06 at 1100–33 (Lawrence P. King ed., 15th ed.) ]; or (ii) whether the affairs of the debtors are so entangled that consolidation will *benefit all creditors.*" (Emphasis added, citations omitted.)

■ Under these equitable guidelines stressing the impact of consolidation on the creditors of both entities, the remedy of substantive consolidation is sparingly granted. One commentator has said, in the context of two debtors in bankruptcy, "Better, we think,

---

7. PHILLIP I. BLUMBERG, THE LAW OF CORPORATE GROUPS, BANKRUPTCY LAW 8 (1985).

8. FED R.BANKR P. 1015 Advisory Committee Note (1983).

to ask are any creditors going to be hurt by this consolidation and, if the answer to that is yes (or more properly, if the one seeking consolidation cannot prove the opposite), consolidation should be denied in almost every case." [9]

## Failure to State a Claim

■ The examples show that although the economic entanglement of the entities is relevant to the consolidation decision, an applicant must allege more than the piercing-of-the-veil factors to state a claim for substantive consolidation. The decisional focus has shifted from alter ego factors to the effect of the consolidation on the general unsecured creditors of the two entities. An applicant must allege equitable grounds for substantive consolidation such as: that general creditors have dealt with the entities as a single economic unit to their detriment; that a necessity exists for consolidation to protect creditors; that a harm to the creditors could be avoided by the remedy; or that the benefits of consolidation outweigh any resulting harm to general creditors of the entities.

■ Although the focus of substantive consolidation should be on its effect on the general creditors of the entities, the complaint's allegations leave the existence of such creditors a mystery. Apparently, Helena did not even notify the unsecured creditors of Custom and Circle of its suit to consolidate. Helena itself is not an unsecured creditor of Circle. Helena is oversecured by $4 million and therefore has no deficiency unsecured claim that could share in any assets Custom might bring to the pool. As an oversecured creditor of Circle, Helena cannot itself satisfy the need or harm elements of substantive consolidation. When cases are substantively consolidated, secured claims such as Helena's are unaffected and maintain their priorities. *Continental Vending Machine*, 517 F.2d 997 (2nd Cir.1975).

The complaint also fails to allege the other equitable grounds for consolidation. There is no allegation that the general creditors of either corporation dealt with the entities as a single economic unit. There is no charge that consolidation is necessary to avoid any particular harm to or to realize any particular benefit for the general creditors of either corporation. In fact, the complaint gives no reason at all for ordering the consolidation to benefit such creditors. Absent such allegations of benefit for or harm to general creditors of both corporations, Helena cannot be said to have stated a claim upon which relief can be granted.

## Consolidating a Non–Debtor

■ Because Custom is a non-debtor company, there are additional reasons for dismissing Helena's complaint.

Since Helena is not a creditor of Custom, it cannot initiate or join in an involuntary petition against Custom. In addition, since Custom meets the definition of a farmer under § 101(20) of the Code, § 303(a) excepts it from being placed in involuntary bankruptcy. If, through its complaint, Helena could consolidate Custom's assets with those of Circle, it would be obtaining relief not permitted to either it or Custom under the Code. Therefore, use of the court's equitable powers to force a non-debtor into bankruptcy without § 303 protection for involuntary petitions conflicts with the express requirements of the Code.

Nevertheless, the bankruptcy decisions upon which Helena relies have consolidated a non-debtor with a debtor using § 105 in disregard of § 303's requirements. *See In re 1438 Meridian Place, N.W.*, 15 B.R. 89 (Bankr.D.D.C.1981); *In re Crabtree*, 39 B.R. 718 (Bankr.E.D.Tenn.1984); *In re Tureaud*, 45 B.R. 658 (Bankr.N.D.Okla.1985); *In re Munford, Inc.*, 115 B.R. 390 (Bankr.N.D.Ga. 1990); *In re Fairfield Construction Co.*, 1995 WL 434474, 1991 Bankr.LEXIS 1395 (E.D.Mich.1991); *In re New Center Hospital*, 179 B.R. 848 (Bankr.E.D.Mich.1994); *In re United Stairs Corp.*, 176 B.R. 359 (Bankr. D.N.J.1995). In effect, these courts have used § 105 as a grant of subject matter jurisdiction.

There is doubt, however, whether the bankruptcy court has either subject matter or personal jurisdiction over a non-debtor.

---

**9.** 3 David G. Epstein, et al., Bankruptcy, § 11–41. at 190 (1992).

The Code is devoid of any provision that can be construed to grant the court jurisdiction over a non-debtor party such as Custom. Using § 105 to support an equitable order of substantive consolidation of a non-debtor with a debtor is, in effect, taking jurisdiction over the non-debtor corporation without express statutory authority. Yet, most bankruptcy cases hold that § 105 is not a jurisdictional grant. *See Matter of Fesco Plastics Corp.*, 996 F.2d 152 (7th Cir.1993) (holding that a bankruptcy court may not invoke § 105 to add something to the Code or to achieve a result inconsistent with what the Code provides); *In re Schwinn Bicycle Co.*, 210 B.R. 747, 761 (Bankr.N.D.Ill.1997) ("Section 105(a) gives the bankruptcy court authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title....' However, a bankruptcy judge can use such authority only if core or related jurisdiction otherwise lies over subject matter of the dispute."); *In re Deltacorp, Inc.*, 111 B.R. 419, 420 (Bankr.S.D.N.Y.1990) ("Section 105 is not a jurisdictional statute *per se....* Section 105 is an aid to the exercise of jurisdiction. It *does not* create substantive rights which do not exist or are otherwise unavailable under applicable law.") (emphasis added); *In re Jacksen*, 105 B.R. 542, 544 (9th Cir. BAP 1989) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. Sections 157 and 1334."); *In re S.T.R. Corp.*, 66 B.R. 49, 51 (Bankr.N.D.Ohio 1986) ("Section 105 is not jurisdictional and does not grant the court jurisdiction which it does not already possess."); *In re Packers' Cold Storage, Inc.*, 64 B.R. 265, 267 (Bankr.C.D.Cal.1986) ("Although some courts have construed section 105(a) as conferring equitable jurisdiction on the bankruptcy and district courts, the better view is that section 105(a) is not a jurisdictional statute.").

Contrary to those decisions that permit substantive consolidation of a non-debtor with a debtor, others have refused to take jurisdiction over a non-debtor for substantive consolidation purposes. *See In re Alpha & Omega Realty, Inc.*, 36 B.R. 416 (Bankr.D.Idaho 1984); *In re DRW Property*

Co. 82, 54 B.R. 489 (Bankr.N.D.Tex.1985); *In re R.H.N. Realty Corp.*, 84 B.R. 356 (Bankr. S.D.N.Y.1988); *In re Julien Co.*, 120 B.R. 930 (Bankr.W.D.Tenn.1990); *In re Lease–A–Fleet*, 141 B.R. 869 (Bankr.E.D.Pa.1992); *In re Ira S. Davis, Inc.*, 1993 WL 384501, 1993 Bankr.LEXIS 1383 (E.D.Pa.1993); *In re Hamilton*, 186 B.R. 991 (Bankr.D.Colo.1995). These decisions question whether bankruptcy courts have subject matter jurisdiction over non-debtor corporations for purposes of substantive consolidation, and they reason that consolidation of a non-debtor is contrary to the Code limitations for involuntary bankruptcy petitions. I agree with the reasoning of these decisions.

Accordingly, Helena's complaint is dismissed for failure to state a claim upon which relief can be granted. In light of the alternative ruling that the Court lacks jurisdiction over the non-debtor, Custom Agri–Services, Inc., Helena is denied leave to replead. *Triplett v. Leflore County, Oklahoma*, 712 F.2d 444, 446 (10th Cir.1983).

The foregoing discussion shall constitute findings of fact and conclusions of law under FED.R.BANKR.P. 7052 and FED.R.CIV.P. 52(a). A judgment reflecting this ruling will be entered on a separate document in compliance with FED.R.BANKR.P. 9021 and FED. R.CIV.P. 58.

IT IS SO ORDERED.