In re HUNTCO INC., et al., Debtors.

No. 02–411185–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Nov. 15, 2003.

Michael A. Clithero, Blackwell Sanders Peper Martin, LLP, St. Louis, MO, Mi-

chael M. Tamburini, Nancy S. Jochens, Blackwell Sanders Peper Martin, LLP, Kansas City, MO, for debtor.

Gary L. Vincent, Husch & Eppenberger, St. Louis, MO, for Official Committee of Unsecured Creditors.

Leonora S. Long, Office of the United States Trustee, St. Louis, MO, for U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

This case is before the Court on the Official Unsecured Creditors' Committee's (the "Committee") Motion to Substantively Consolidate the Estates of Huntco, Inc., Huntco Steel, Inc. and Midwest Products, Inc. (collectively the "Debtors"). The Court will deny the Committee's motion because: (1) the Committee failed to produce evidence that any creditor that would benefit from substantive consolidation actually relied on the interrelationship among the Debtors; and (2) substantively consolidating the Debtors' estates would unjustifiably redistribute the Debtors' collective assets in favor of Huntco Steel's creditor at the expense of the creditors of Midwest Products and Huntco.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) & (O), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FACTUAL AND PROCEDURAL BACKGROUND

Huntco is a holding company whose primary asset was the equity interest of Huntco Nevada, Inc. Huntco Nevada in turn was a holding company whose primary assets were the equity interest of Huntco Steel and Midwest Products. Thus, Huntco Steel and Midwest Products were indirect wholly owned subsidiaries of Huntco.

The Debtors each filed for relief under Chapter 11 of the United States Bankruptcy Code on February 4, 2002. The Court has jointly administered each of the Debtor's individual cases. The Committee now seeks to substantively consolidate the individual Debtors' estates. The following evidence was adduced at the hearing on the Committee's motion.

Huntco Steel fabricated raw steel from its component metals and Midwest Products fabricated finished products from raw steel. Midwest Products purchased its raw steel from Huntco Steel. Midwest Products, however, purchased the steel from Huntco Steel at market price and on terms prevailing within the industry. Also, the Debtors did have at least two overlapping directors on their respective boards and did have some common officers.

Because of falling prices for its primary product, raw steel, Huntco Steel began to experience significant financial problems sometime in 2000. Because of its financial problems, Huntco Steel was unable to obtain credit in the open market for much needed operating capital. Midwest Products assisted Huntco Steel in temporarily alleviating its liquidity problem by obtaining a $5,000,000 loan from Congress Financial ("Congress") and providing the loan proceeds to Huntco Steel.

Although Huntco Steel's CFO testified that Midwest Products provided the $5,000,000 to Huntco Steel in the form of a loan, the parties did not execute a promissory note nor did they reflect the transaction as a loan on their respective financial statements. Also, a plant owned by Huntco Steel was used to secure the underlying loan from Congress to Midwest Products.

Huntco Steel then obtained a $10,000,000 loan from Enron North America Corp. ("Enron") on April 6, 2001. Huntco Steel remitted $5,000,000 of the loan proceeds to Congress in exchange for Congress releasing its security in the plant securing Congress' loan to Midwest Products. Huntco Steel utilized the remaining $5,000,000 from the loan to pay some of its creditors.

Hutco Steel executed a promissory note in favor of Enron (the "Promissory Note") in exchange for the $10,000,000. Both Midwest Products and Huntco guaranteed Huntco Steel's obligations under the Promissory Note. Also, the same person, Robert J. Merishen, executed the Promissory Note on behalf of Midwest Products, Huntco Steel and Huntco.

If the Court does not substantively consolidate the Debtors' estates, Midwest Products' unsecured creditors will be paid in full and Huntco's creditors will receive a distribution of approximately 29% of their claims. Huntco Steel's unsecured creditors, however, will only receive a distribution of about 1% of their claims. If the Court substantively consolidated the Debtors' estates, each Debtor's unsecured creditors will receive a distribution of about 5.5% of their claims.

The Committee filed this motion on August 29, 2003. The Debtors, the United States' Trustee and Control Devices, Inc., a creditor of Midwest Products, (collectively the "Objectors") objected to the Committee's motion.

The Committee argues that the Court should substantively consolidate the Debtors' estates because of the inter-corporate transactions among the Debtors and their overlapping officers and directors. The Objectors counter by asserting that substantive consolidation is not appropriate because it will redistribute the Debtors' collective assets at the expense of the creditors of Midwest Products and Huntco and the Committee failed to produce any equitable grounds for such a redistribution. The Court agrees and will deny the Committee's motion.

## DISCUSSION

### A. Introduction

Substantive consolidation is the pooling of two or more debtors' assets and liabilities so that of each of the debtor's liabilities are satisfied from the common pool of assets created by the consolidation. *Eastgroup Properties v. S. Motel Assoc. (In re Southern Motel Assoc.)*, 935 F.2d 245, 247 (11th Cir.1991). The sole purpose of substantive consolidation is to promote the fair and equitable distribution of the debtors' collective assets. *S. Motel*, 935 F.2d at 248; *FDIC v. Colonial Realty*, 966 F.2d 57, 61 (2d Cir.1992); *In re Bonham*, 229 F.3d 750, 764 (9th Cir.2000). Although the Code itself does not expressly allow for substantive consolidation, a bankruptcy court has the power to substantively consolidate various debtors' estates under its general equitable powers contained in § 105(a). *Colonial Realty Co.*, 966 F.2d at 59; *Bonham*, 229 F.3d at 764. Because substantive consolidation usually harms some creditors, courts should apply the doctrine sparingly. *Id.; Colonial Realty*, 966 F.2d at 61. Thus, a court should only apply substantive consolidation if after a searching review of the record it is apparent that substantive consolidation is necessary to achieve a fair and equitable distribution of the debtors' collective assets. *S.*

*Motel,* 935 F.2d at 250 n. 14; *Colonial Realty,* 966 F.2d at 61; *Bonham,* 229 F.3d at 765.

■ The Eighth Circuit has stated that the bankruptcy court's searching analysis should including the following three factors: (1) the necessity of consolidation due to the interrelationship among the debtors; (2) whether the benefits of consolidation outweigh the harm to creditors; and (3) prejudice resulting from not consolidating the debtors. *First Nat'l Bank v. Giller (In re Giller),* 962 F.2d 796, 799 (8th Cir. 1992). The Eighth Circuit's use of the term "include" in identifying these three factors indicates that these factors are only illustrative of the type of fact specific analysis that the court must conduct. *See In re Affiliated Foods,* 249 B.R. 770, 777 (Bankr.W.D.Mo.2000).

■ The proponent of substantive consolidation has the burden of producing evidence that demonstrates its necessity. *Affiliated Foods,* 249 B.R. at 775 (Bankr. W.D.Mo.2000). Because of the harm substantive consolidation will inflict upon some creditors, the proponent's burden of establishing the need for substantive consolidation is exacting. *Reider v. FDIC (In re Reider),* 31 F.3d 1102, 1109 (11th Cir. 1994). Here, because the Committee has failed to proffer evidence that any creditor that would benefit from substantive consolidation detrimentally relied on the interrelationship among the Debtors, the Committee has not met its exacting burden of proof.

*B. There Committee failed to establish the necessity of substantive consolidation because of the interrelationship among the Debtors.*

■ The Committee's sole basis for arguing that substantively consolidation is

necessary is the interrelationship among the Debtors. As illustrated above, the Eighth Circuit did include the interrelationship among the debtors as one of the factors that the bankruptcy court should include in its substantive consolidation analysis. *Giller,* 962 F.2d at 796. The analysis, however, should not only focus upon that interrelationship, but also on the necessity of consolidation because of it. *Id.* Thus, the analysis should also focus on whether the creditors of the various debtors actually relied on that interrelationship and treated the debtors as a single entity. *S. Motel,* 935 F.2d at 250; *In re 599 Consumer Electronics, Inc.,* 195 B.R. 244, 249 (S.D.N.Y.1996); *Affiliated Foods,* 249 B.R. at 783; *In re Circle Land & Cattle,* 213 B.R. 870, 876 (Bankr.D.Kan.1997); *In re Leslie Fay Cos.,* 207 B.R. 764, 780 (Bankr.S.D.N.Y.1997).

■ Here, the Committee failed to adduce any evidence that demonstrates a need to substantively consolidate the Debtors' estates because of the interrelationships among the three Debtors. The Committee did produce evidence that suggested that Congress and Enron may have relied on the financial strength of Huntco and Midwest Product's relative to Huntco Steel's financial condition and the Debtors' overlapping officers and directors. Congress, however, extended credit to Midwest Products, not Huntco Steel. Also, Midwest Products and Huntco were obligated on the Promissory Note Huntco Steel executed in favor of Enron. Thus, the evidence clearly demonstrates that both Congress and Enron did not detrimentally rely on the interrelationship among the Debtors.[1] Accordingly, the Committee has failed to establish a need to

1. Even assuming that the Committee's evidence somehow demonstrated that Congress

or Enron did detrimentally rely on the interrelationship among the Debtors, the Com-

substantively consolidate the Debtors' estates because of the interrelationship among them.[2]

*C. Substantive Consolidation will unjustifiably harm the creditors of Midwest Products and Huntco.*

■ The Committee also ignores the harm the creditors of Midwest Products and Huntco would suffer if the Court substantively consolidates the Debtors' estates. Substantive consolidation may be appropriate in cases even where the creditors did not rely on the interrelationship among the debtors if its application does not benefit one group of creditors at the expense of another. For example, in *Giller*, the Eighth Circuit found that substantive consolidation was appropriate where pooling the debtors' assets would allow the trustee to bring avoidance actions on behalf of the insolvent debtors. *Giller*, 962 F.2d at 799. The court premised its holding, at least in part, on the possibility that the avoidance actions would generate sufficient funds to the consolidated estate so that the consolidation would not harm the solvent debtor's creditors. *Id.*

■ In the present case, however, as outlined above, the creditors of Midwest Products and Huntco will certainly receive a substantially lower return on their claims if the Court substantively consolidates the Debtors' estates. Because substantive consolidation is purely an equitable remedy, a court should not employ it when it would benefit one set of creditors at the expense of another unless the proponent can advance some equitable reason for such a redistribution. *Union Savings Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 521 (2d Cir.1988); *Circle Land & Cattle*, 213 B.R. at 875–76. Here, the Committee has not advanced an equitable reason why the Debtors' collective assets should be redistributed in favor of Huntco Steel's creditors. Accordingly, the Court will not exercise its equitable powers to redistribute the Debtors' collective assets.

## CONCLUSION

Although the Committee did produce evidence of inter-corporate transactions among the Debtors and some overlapping officers and directors, it failed to demonstrate that any creditor detrimentally relied on that interrelationship. Also, substantive consolidation would benefit Huntco Steel's creditors at the expense of the creditors if Midwest Products and Huntco and the Committee failed to establish any equitable grounds that would warrant such a redistribution. Therefore, the Committee has failed to meet its exacting burden of demonstrating that substantive consolidation is warranted in these cases. Thus, the Court will deny its motion.

---

mittee still failed to establish the need to substantively consolidate the Debtors' estates because Congress' claim was paid in full and Enron has settled its claim against Huntco Steel.

2. The Committee's argument confuses veil piercing with substantive consolidation. It is true that both veil piercing and substantive consolidation involve disregarding separate corporate structures. The two doctrines, however, are intended to remedy two distinct problems. Veil piercing is used to defeat a corporation's limited liability when it share-

holders dominates and controls the corporation's activities while substantive consolidation is intended to redistribute two or more debtors' collective assets when creditors detrimentally relied on the debtors' interconnectedness. Therefore, veil piercing and substantive consolidation are utilized to remedy two different problems and any analogy between the two is misplaced. *See* J. Stephen Gilbert, Note, *Substantive Consolidation in Bankruptcy: A Primer*, 43 Vand. L. Rev. 207, 218 (1990).

An Order consistent with this Memorandum Opinion will be entered this date.