## IN RE: EXPERT SOUTH TULSA, LLC, Debtor.

### Case No. 10–20982

United States Bankruptcy Court, D. Kansas.

Filed April 28, 2011

---

Jonathan A. Margolies, McDowell Rice Smith & Buchanan, Kansas City, MO, for Debtor.

## Chapter 11

## FINAL ORDER GRANTING MOTION TO ENFORCE AUTOMATIC STAY AND DENYING REQUEST FOR SANCTIONS

ROBERT D. BERGER, U.S. BANKRUPTCY JUDGE

Debtor moves to enforce the automatic stay, requests a declaration voiding a post-

petition state court action against Debtor's principals, and requests sanctions against claimants Tom Christopolous and South Tulsa Hotel, LLC (collectively, "Plaintiffs"). The motion is granted, in part. Plaintiff's Second Amended Petition is void, but each party shall bear their own costs.

### Background

On March 30, 2010, another of Debtor's creditors, Team Viva, filed an involuntary Chapter 7 petition, which Debtor later voluntarily converted to Chapter 11. Debtor's business is to own, develop, and sell commercial property located in Tulsa, Oklahoma. Debtor's financial difficulties stem primarily from a failed real estate development known as Memorial Commons. The project was to include retail shopping, restaurants, and office space. Edwin H. Hawes III and Lawrence B. McLellan II are Debtor's sole members. Debtor is an Oklahoma limited liability company. Debtor's primary place of business and its principals are located in Kansas.

Plaintiffs purchased from Debtor an undeveloped hotel site at what was to be Memorial Commons. Prior to bankruptcy, Plaintiffs filed suit against Debtor, alleging breach of contract and misrepresentation regarding the sale of the hotel site (the "Oklahoma Litigation").

 Upon initiation of Debtor's involuntary bankruptcy, the Oklahoma Litigation was stayed against Debtor.[1] The purpose of the automatic stay is to provide creditors protection and not to allow a single creditor or group of creditors to procure advantage over other creditors who hold claims against the bankruptcy estate. If a cause of action may be brought by the trustee, which includes a debtor-in-possession in a Chapter 11 proceeding, the stay prevents individual creditors from bringing causes of action similar to those which may be brought by the trustee. Post-petition Plaintiffs filed a second amended petition seeking to hold Hawes and McLellan jointly and severally liable under an alter ego remedy ("Alter Ego Litigation"). Plaintiffs allege Debtor was undercapitalized and not an independent entity with the ability to perform its contractual obligations arising from Memorial Commons.

### A. The Alter Ego Doctrine

 Limited liability company members, like corporate shareholders, may be held liable for debts of the company under the alter ego doctrine. The alter ego doctrine allows a plaintiff "to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation."[2] The objective in an alter ego claim is to pierce the corporate veil of a corporate defendant to reach the assets of the shareholders.[3] A finding of fact of alter ego, standing alone, creates no cause of action. It merely imposes liability against a second corporation or individual upon an underlying cause of action, such as fraud or breach of contract, brought against the first corpora-

1. *See* 3 Collier on Bankruptcy ¶ 362.03 362.03[1] at 362–23 and 24 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010).

2. *Bankers Trust Co. v. Lee Keeling & Assocs., Inc.*, 1992 WL 602830 (N.D.Okla.1992), *quoting* 1 Fletcher, Cyclopedia of the Law of Private Corporations § 41.28 at 658 n.10 (1990).

3. *Bankers Trust, at *1, citing Home–Stake Production Co. v. Talon Petroleum*, 907 F.2d 1012, 1018 (10th Cir.1990); *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, 178 Okla. 15, 61 P.2d 645 (1936); and *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269, 1275 n. 20 (Okla. 1981).

tion.[4] One who seeks to disregard the corporate veil must show the corporate form was abused to the injury of a third party; however, fraud is not a necessary element under Oklahoma law.[5]

## B. The Automatic Stay

■■ Section 362(a)(1) stays any action or proceedings against the debtor. Generally, the stay applies only to the debtor and not to non-debtor co-defendants.[6] A narrow exception to the general rule provides the stay may be extended to non-debtors where there is such identity between the non-debtor defendant and the debtor that a judgment against the former will in effect be a judgment against the latter.[7]

■ While an alter ego action may be an action against a non-debtor third-party, it is also an action "to recover a claim against the debtor" because absent a claim against the debtor, there is no independent basis for the action against the principal.[8] It is these claims or causes of action that § 362(a)(3) also stays. *Dixie Aire*, cited by Plaintiffs, involved the inverse order of claims presented here. The underlying claims of fraud and breach of contract were alleged against a non-debtor corporation and an individual. Alter ego liability of the debtor would only arise secondarily. *Dixie Aire* found the stay did not apply to the underlying claims pending against the non-debtors but did apply to the alter ego

claim against the debtor.[9] In this case, breach of contract and misrepresentation claims are pending directly against Debtor, with alter ego claims asserted against the non-debtors. Thus, *Dixie Aire* does not apply.

## C. Does the Automatic Stay Apply to the Alter Ego Claims Against Non–Debtors?

Case law is divided as to whether an alter ego action, or an action to pierce the corporate veil, becomes property of the estate upon the corporate debtor's bankruptcy. Some cases hold an alter ego action against shareholders does not constitute property of the corporate debtor's estate because an alter ego action is personal to each of the corporation's creditors, since a corporate entity will be disregarded only if the entity has been abused to the detriment of a third party.[10] Some cases also recite as support that the corporation cannot bring a cause of action under the alter ego theory against itself; however, these cases miss the obvious legal effect that upon the filing of a petition in bankruptcy under Chapter 11, a new fictitious entity, separate and very different from the pre-petition fictitious entity, is created. Also, contrary authority holds an alter ego cause of action constitutes property of the corporate debtor's estate even though, outside of bankruptcy, such an action is usually asserted by the corporation's creditors.[11] According to these

---

**4.** *Fanning v. Brown,* 85 P.3d 841, 846–48 (Okla.2004).

**5.** 1 Fletcher, Cyclopedia of the Law of Private Corporations § 41.10 (1990); *Sautbine v. Keller,* 423 P.2d 447, 451 (Okla.1966); *Sampson v. Hunt,* 233 Kan. 572, 579, 665 P.2d 743 (1983).

**6.** *Dixie Aire Title Services, Inc. v. SPW, L.L.C.,* 389 B.R. 222, 225 (W.D.Okla.2008).

**7.** *Id. citing A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

**8.** *Thomas v. Vertigo, Inc.,* 900 P.2d 458, 460 (Okla.App.1995).

**9.** *Dixie Aire Title Services,* 389 B.R. at 225.

**10.** *See, e.g., In re Ozark Restaurant Equipment, Co., Inc.,* 816 F.2d 1222 (8th Cir.1987).

**11.** *See, e.g., Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339 (7th Cir. 1987).

cases, upon a corporate debtor's bankruptcy, a trustee has exclusive standing to bring the alter ego claim to collect assets for the benefit of all creditors over a specific creditor seeking to collect an asset for itself.

■ Although federal bankruptcy law determines what is property of a bankruptcy estate, it is state law that determines property rights. Generally, the law of the state of incorporation of the debtor is the law that applies with regard to the alter ego claim. Likewise, it is probably state law that determines whether the debtor has standing to bring an action under the alter ego theory and, implicitly, whether this Court has jurisdiction over the claim. Not lost in the analysis is that the debtor is a separate entity from the pre-petition fictitious entity and that the driving purpose of bankruptcy is to benefit the bankruptcy estate and all of the creditors of that estate, to include an equal distribution of assets for all those similarly situated creditors in conformity with the directives of the Bankruptcy Code.

■ Whether an alter ego action will be included in a corporate debtor's estate depends upon state law.[12] State law determines whether a corporation has an interest in an alter ego cause of action against its shareholders. Federal law determines whether any such interest is property of the corporate debtor's estate. Corporations do not usually seek to disregard their own corporate form; rather, corporations seek remedies from its officers and directors for breach of duties or mismanagement.[13] Such derivative suits become property of the estate. Whether a creditor's alter ego remedy also becomes property of the estate depends upon whether the underlying claim redresses a specific injury to a particular creditor or is a general claim which could inure to the benefit of any creditor dealing with company.[14] The remedy remains with the creditor if it addresses a personal claim.[15] A general claim, on the other hand, may be asserted by either the corporation or its creditors. These claims arise when the corporation was allegedly mismanaged or abused, but the third-parties transacting business with it were not directly harmed; rather, they were indirectly harmed by the alleged misconduct. Whether the claim is personal or general depends upon the alleged misconduct and resulting injury underlying the alter ego claim.[16]

■ Oklahoma law does not provide a clear answer, but it is likely to follow *Koch Refining* and hold the corporation has standing to pursue an alter ego claim which benefits its creditors generally.[17] Furthermore, where state law is unclear, courts turn to federal bankruptcy law to

12. *See, e.g., Baillie Lumber Co., LP v. Thompson,* 413 F.3d 1293 (11th Cir.2005).

13. *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 861 (10th Cir.1986); *Ford Motor Credit Co. v. Minges,* 473 F.2d 918, 920–21 (4th Cir.1973).

14. *Koch Refining,* 831 F.2d at 1346; *In re Schimmelpenninck,* 183 F.3d 347, 359 (5th Cir.1999).

15. *Ozark Restaurant Equipment,* 816 F.2d at 1225 (interpreting Arkansas law).

16. *Koch Refining,* 831 F.2d at 1349.

17. *Resolution Trust Corp. v. Greer,* 911 P.2d 257, 264 (Okla.1995); *Transportation Alliance Bank, Inc. v. Arrow Trucking Co.,* 766 F.Supp.2d 1188 (N.D.Okla.2011). Kansas law holds the alter ego remedy belongs to creditors generally and should not inure to the benefit of a single creditor to the prejudice of others. *Commerce Bank, N.A. v. Liebau–Woodall & Assocs., L.P.,* 28 Kan.App.2d 674, 680–81, 20 P.3d 88 (2001), *citing Pemco, Inc. v. Kansas Dept. of Revenue,* 258 Kan. 717, 723, 907 P.2d 863 (1995).

determine whether the trustee has standing to bring, settle and release alter ego claims which inure to creditors generally. Bankruptcy law favors the trustee's standing because its ultimate goal is the equitable distribution of assets and the prevention of one creditor recovering a fund rightfully belonging to other creditors similarly situated.[18] Underscoring this goal, some cases note the similarities between piercing a corporate debtor's veil and substantive consolidation.[19] When the corporate shell is dissolved, the two entities become one. Likewise, in bankruptcy, collapsing a debtor corporation into another entity or individual brings both parties' assets and liabilities into the estate for equitable administration.[20]

 In this case, Plaintiffs allege undercapitalization and Debtor's inability to complete Memorial Commons as promised. These are general claims any creditor transacting business with the Debtor could assert. Accordingly, the claim is property of the estate to be administered or abandoned.

### D. Violation of the Automatic Stay

 The Court finds that the Plaintiffs violated the bankruptcy automatic stay under § 362(a)(1) and (a)(3) from and beginning with any and all actions taken in the Oklahoma Litigation and the Alter Ego Litigation since the date that the involuntary bankruptcy was filed for this Debtor on March 30, 2010; further, the Court finds that any and all actions in said litigation on or after March 30, 2010, are void and of no legal effect. The Oklahoma Litigation and the Alter Ego Litigation remain stayed. However, considering the complexity of the Oklahoma Litigation and the divergence of pertinent case law, the Court does not impose monetary sanctions upon the Plaintiffs.

### Conclusion

Debtor's Motion to Enforce the Automatic Stay is GRANTED.

IT IS SO ORDERED.

---

**18.** *See, e.g., Transportation Alliance Bank, Inc. v. Arrow Trucking Co.,* 766 F.Supp.2d 1188, 1999–1200 (N.D.Okla.2011); *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In the Matter of S.I. Acquisition, Inc.),* 817 F.2d 1142, 1153 (5th Cir.1987).

**19.** *Mather v. G.K. Pipe Corp., (In re Moran Pipe & Supply Co., Inc.),* 130 B.R. 588 (Bankr. E.D.Okla.1991); *Helena Chemical Co. v. Circle Land and Cattle Corp., (In re Circle Land and Cattle Corp.),* 213 B.R. 870 (Bankr.D.Kan. 1997).

**20.** *In re Moran Pipe & Supply Co., Inc.,* 130 B.R. at 593.